## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

PLANNED PARENTHOOD OF GREATER
TEXAS FAMILY PLANNING AND
PREVENTATIVE HEALTH SERVICES, INC.;
PLANNED PARENTHOOD SAN ANTONIO;
PLANNED PARENTHOOD CAMERON
COUNTY; PLANNED PARENTHOOD
SOUTH TEXAS SURGICAL CENTER;
PLANNED PARENTHOOD GULF COAST,
INC.; and JANE DOE #1; JANE DOE #2;
JANE DOE #3; JANE DOE #4; JANE DOE #5;
JANE DOE #6; JANE DOE #7; JANE DOE #8;
JANE DOE #9; and JANE DOE #10, on their
behalf and on behalf of all others similarly
situated,

                  Plaintiffs,

        v.

CHRIS TRAYLOR, Executive Commissioner,
Texas Health and Human Services Commission,
and STUART W. BOWEN, JR., Inspector
General, Texas Health and Human Services
Commission, Office of Inspector General,

                  Defendants.

No.   1:15-CV-01058

---

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF—CLASS ACTION

      Plaintiffs, by and through their attorneys, and on behalf of all members of the class, bring

this Complaint against the above-named Defendants and their employees, agents, delegates, and

successors in office, in their official capacity, and in support thereof state the following:

### INTRODUCTORY STATEMENT

      1.     This civil action is brought pursuant to 42 U.S.C. § 1983 to vindicate rights

secured by the federal Medicaid statutes as well as the U.S. Constitution.

2.      Plaintiffs Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Inc. ("PPGT"); Planned Parenthood San Antonio ("PPSA"), Planned Parenthood Cameron County ("PPCC"), Planned Parenthood South Texas Surgical Center ("PPSTSC") (together with PPSA and PPCC, "PPST"); and Planned Parenthood Gulf Coast, Inc. ("PPGC") (collectively, "Provider Plaintiffs") provide critically needed family planning and preventive health services to thousands of women and men in underserved areas of Texas through the Medicaid program. For several decades, the Provider Plaintiffs have been trusted Medicaid providers for tens of thousands of Texans.

3.      As is required by federal law, Medicaid enrollees may seek services from a participating provider of their choice and have those services covered by Medicaid. Plaintiffs Jane Doe #1 through #10 ("Patient Plaintiffs") are such women—patients of Provider Plaintiffs who are enrolled in Medicaid and who prefer Provider Plaintiffs to other Medicaid providers. Texas Medicaid does not pay for abortions except in extremely narrow circumstances.

4.      On October 21, 2015, without giving any warning or expressing any previous concerns about Provider Plaintiffs' qualifications to participate in the Medicaid program, the Office of Inspector General of the Texas Health and Human Services Commission ("HHSC") notified the Provider Plaintiffs by Notices of Termination ("Notices") that HHSC was terminating Provider Plaintiffs' Medicaid provider agreements, effective fifteen days after forthcoming Final Notices of Termination. The Notices state that these terminations are based on information that one of the Planned Parenthood organizations (PPGC): 1) "follow[ed] a policy of agreeing to procure fetal tissue even if it means altering the timing or method of an abortion"; 2) failed to comply with universal precautions for the safe handling of bodily tissue and fluid by "allow[ing] individuals posing as commercial buyers of fetal body parts to handle bloody fetal

tissue while wearing only gloves"; 3) failed to train staff on such precautions; and 4) had billed Medicaid for services that were unnecessary or had not occurred.

5.      Each of these allegations is false. In addition, each is wholly irrelevant to Plaintiffs PPGT and PPST and to their qualifications as Medicaid providers.

6.      Plaintiffs seek declaratory and injunctive relief to protect Patient Plaintiffs' and other class members' access to—and the Provider Plaintiffs' own ability to provide—these critical medical services. Defendants' actions violate Section 1396a(a)(23) of Title 42 of the United States Code ("Medicaid freedom of choice provision") because, by barring the Provider Plaintiffs from the Medicaid program, Defendants prevent Provider Plaintiffs' patients, including Plaintiffs Jane Doe #1 through #10, from receiving services from their qualified, willing provider of choice. Defendants' actions further impermissibly single out Plaintiffs for unfavorable treatment without adequate justification, in violation of the equal protection clause of the Fourteenth Amendment.

7.      Unless enjoined, the termination of Provider Plaintiffs' Medicaid provider agreements will take effect as early as December 8, depending on exactly when HHSC issues its Final Notices of Termination, immediately disqualifying Provider Plaintiffs from providing basic and preventive health care services to over 13,500 Texas women and men who depend on Provider Plaintiffs for that care. Defendants' actions will cause significant and irreparable harm to Provider Plaintiffs and to their Medicaid patients, including Plaintiffs Jane Doe #1 through #10, who will lose their provider of choice, will find their family planning services interrupted, and in many cases will be left with reduced access to care.

## JURISDICTION AND VENUE

8.     Subject-matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343.

9.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

10.     Venue in this judicial district is proper under 28 U.S.C. § 1391.

## THE PARTIES

**A.     Plaintiffs**

11.     Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Inc. is a Texas not-for-profit corporation, headquartered in Dallas. PPGT and its predecessor organizations have provided high-quality care to Medicaid beneficiaries in Texas for decades. PPGT provides family planning and other preventive health services to Medicaid beneficiaries at seventeen health centers in Texas: in Addison, Arlington, Austin, Bedford, Cedar Hill, Dallas, Denton, Fort Worth, Plano, Lewisville, Mesquite, Paris, Tyler, and Waco. PPGT offers Medicaid patients a range of family planning and other health services at these centers, including physical exams, contraception (including long-acting reversible contraception or "LARC") and contraceptive counseling, clinical breast exams, screening and treatment for cervical cancer, testing for sexually transmitted infections ("STIs"), pregnancy testing and counseling, and certain procedures including biopsies and colposcopy. In 2014, PPGT provided over 10,000 visits to over 5000 patients enrolled in the Texas Medicaid program, including over 2800 visits to provide or remove LARCs and over 2800 well women exams. PPGT brings this action on behalf of itself and its patients.

12.     Planned Parenthood San Antonio, Planned Parenthood Cameron County, and Planned Parenthood South Texas Surgical Center, not-for-profit corporations headquartered in San Antonio, are subsidiaries of Planned Parenthood South Texas, Inc. PPST and its predecessor organizations have provided high-quality care to Medicaid beneficiaries in Texas for decades. PPST provides family planning and other preventive health services to Medicaid beneficiaries at six health centers in Texas in Brownsville, Harlingen, and San Antonio. PPST offers Medicaid patients a range of family planning and other health services at these centers, including physical exams, contraception (including LARC) and contraceptive counseling, screening for breast cancer, screening and treatment for cervical cancer, screening for STIs, pregnancy testing and counseling, and certain procedures including biopsies and colposcopy. In 2014, PPST provided over 3000 visits to over 1900 patients enrolled in the Texas Medicaid program, including over 1800 exams, over 900 LARCs, over 1400 STI tests (including nearly 600 HIV tests), and over 600 visits to provide hormonal contraception. PPST brings this action on behalf of itself and its patients.

13.     Planned Parenthood Gulf Coast, Inc. is a Texas not-for-profit corporation, headquartered in Houston. PPGC and its predecessor organizations have provided high-quality care to Medicaid beneficiaries in Texas for decades. PPGC provides family planning and other preventive health services to Medicaid beneficiaries at seven health centers in the Houston Metropolitan area. PPGC offers Medicaid patients a range of family planning and other health services at these centers, including physical exams, contraception (including LARC) and contraceptive counseling, screening for breast cancer, screening and treatment for cervical cancer, screening for STIs, pregnancy testing and counseling, and certain procedures including biopsies and colposcopy. In 2014, PPGC provided over 9000 visits to over 6500 patients enrolled

in the Texas Medicaid program, including over 11,900 STI tests (including nearly 2000 HIV screenings), over 2200 well women exams, over 4600 units of LARCs, and over 1100 visits for oral contraception.

14.     PPGC does not provide abortions. PPGC has a facilities and services agreement with a separate organization, Planned Parenthood Center for Choice, Inc. ("PPCFC"), which does. PPCFC rents space in a building owned by PPGC and operates the PPCFC Ambulatory Surgical Center.  PPGC and PPCFC share a president and CEO, but each organization has its own board of directors, bylaws, and staff. PPGC brings this action on behalf of itself and its Texas patients.

15.     Plaintiff Jane Doe #1, a Texas resident and Medicaid patient, obtains her reproductive health care at various PPST health centers and desires to continue to do so.  She sues on behalf of herself and as a representative of a class of Texas Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services at PPST.

16.     Plaintiff Jane Doe #2, a Texas resident and Medicaid patient, obtains her reproductive health care at PPST's Marbach health center and desires to continue to do so. She sues on behalf of herself and as a representative of a class of Texas Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services at PPST.

17.     Plaintiff Jane Doe #3, a Texas resident and Medicaid patient, obtains her reproductive health care at PPGT's North Austin health center and desires to continue to do so. She sues on behalf of herself and as a representative of a class of Texas Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services at PPGT.

18.     Plaintiff Jane Doe #4, a Texas resident and Medicaid patient, obtains her reproductive health care at PPGC's Prevention Park health center and desires to continue to do

so.  She sues on behalf of herself and as a representative of a class of Texas Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services at PPGC.

19.     Plaintiff Jane Doe #5, a Texas resident and Medicaid patient, obtains her reproductive health care at PPGT's Waco health center and desires to continue to do so.  She sues on behalf of herself and as a representative of a class of Texas Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services at PPGT.

20.     Plaintiff Jane Doe #6, a Texas resident and Medicaid patient, obtains her reproductive health care at PPGT's North Austin health center and desires to continue to do so. She sues on behalf of herself and as a representative of a class of Texas Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services at PPGT.

21.     Plaintiff Jane Doe #7, a Texas resident and Medicaid patient, obtains her reproductive health care at PPST's Marbach health center and desires to continue to do so.  She sues on behalf of herself and as a representative of a class of Texas Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services at PPST.

22.     Plaintiff Jane Doe #8, a Texas resident and Medicaid patient, obtains her reproductive health care at PPGC's Greenspoint health center and desires to continue to do so. She sues on behalf of herself and as a representative of a class of Texas Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services at PPGC.

23.     Plaintiff Jane Doe #9, a Texas resident and Medicaid patient, obtains her reproductive health care at PPGC's Greenspoint health center and desires to continue to do so. She sues on behalf of herself and as a representative of a class of Texas Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services at PPGC.

24.     Plaintiff Jane Doe #10, a Texas resident and Medicaid patient, obtains her reproductive health care at PPGT's North Austin health center and desires to continue to do so. She sues on behalf of herself and as a representative of a class of Texas Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services at PPGT.

25.     Plaintiffs Jane Doe #1 through #10 appear pseudonymously because of the private and personal nature of the medical care that they receive at Provider Plaintiffs, and their desire not to have that information become public in order for them to assert their legal rights.

**B.     Defendants**

26.     Chris Traylor is Executive Commissioner of HHSC, and in that role, governs HHSC, which is the state agency that administers Texas's Medicaid program and has notified the Provider Plaintiffs that it intends to terminate their provider agreements. Defendant Traylor is sued in his official capacity, as are his employees, agents, and successors in office.

27.     Stuart W. Bowen, Jr. is Inspector General of HHSC, whose office—the Office of Inspector General—is a division within HHSC. Defendant Bowen notified Provider Plaintiffs that he intended to terminate their provider agreements on behalf of HHSC.  Defendant Bowen is sued in his official capacity, as are his employees, agents, and successors in office.

## THE MEDICAID PROGRAM

**A.     The Medicaid Statute**

28.     The Medicaid program, established under Title XIX of the Social Security Act of 1935, 42 U.S.C. § 1396 *et seq*., pays for medical care for eligible needy people. A state may elect whether or not to participate; if it chooses to do so, it must comply with the requirements imposed by the Medicaid statute and by the Secretary of the U.S. Department of Health and

Human Services ("HHS") in her administration of Medicaid. *See generally* 42 U.S.C. § 1396a(a)(1)–(83).

29.    To receive federal funding, a participating state must develop a "plan for medical assistance" and submit it to the Secretary of HHS for approval. 42 U.S.C. § 1396a(a).

30.    Among other requirements, the State plan must provide that: "[A]ny individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23)(A).

31.    Congress has singled out family planning services for special additional protections to ensure freedom of choice, specifically providing that, with respect to these services and with certain limited exceptions not applicable here, "enrollment of an individual eligible for medical assistance in a primary care case-management system . . . , a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services…" 42 U.S.C. § 1396a(a)(23)(B).

32.    The federal government reimburses the state of Texas 90% of expenditures attributable to offering, arranging, and furnishing family planning services and supplies in Medicaid. 42 U.S.C. § 1396b(a)(5).

**B.    Implementation of the Medicaid Act**

33.    For decades, the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that administers Medicaid (and its predecessor organization), has repeatedly interpreted the "qualified" language in Section 1396a(a)(23) to prohibit states from denying access to a provider for reasons unrelated to the ability of that provider to perform Medicaid-

covered services or to properly bill for those services, including reasons such as the scope of the medical services that the provider chooses to offer.

34.    CMS has explained that "[t]he purpose of the free choice provision is to allow [Medicaid] recipients the same opportunities to choose among available providers of covered health care and services as are normally offered to the general population." Ctrs. for Medicare & Medicaid Servs., CMS Manuals Publication #45, State Medicaid Manual § 2100.

35.    Consistent with this understanding, CMS has a long history of rejecting state plans that seek to limit the type of provider that can provide particular services. *See, e.g.*, 53 Fed. Reg. 8699-03 (Mar. 16, 1988) (noting rejection of a state plan that would limit providers to "private nonprofit" organizations); 67 Fed. Reg. 79121 (Dec. 27, 2002) (noting disapproval of a state plan amendment that would have limited "beneficiary choice . . . by imposing standards that are not reasonably related to the qualifications of providers").

36.    More recently, CMS rejected an Indiana plan that barred state agencies from contracting with or making grants to any entities that perform abortion because it violated the Medicaid freedom of choice provision. Letter from Donald M. Berwick, Adm'r, CMS, to Patricia Casanova, Dir., Ind. Off. of Medicaid Pol'y and Plan. (June 1, 2011), http://www.politico.com/static/PPM169_110601_indiana_letter.html.

37.    Moreover, even though CMS is permitted to waive § 1396a(a)(23) in demonstration projects approved under Social Security Act § 1115, CMS repeatedly rejects state requests to do so for family planning services, including twice in the last year and a half: first in Pennsylvania, *see* Letter from Marilyn Tavenner, Adm'r, CMS, to Beverly Mackereth, Sec'y, Pa. Dep't of Pub. Welfare (Aug. 28, 2014), http://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-Topics/Waivers/1115/downloads/pa/pa-healthy-ca.pdf ("No waiver of freedom

of choice is authorized for family planning providers."); and more recently in Iowa, *see* Letter from Manning Pellanda, Dir., CMS Div. of State Demonstrations and Waivers, to Julie Lovelady, Interim Medicaid Dir., Iowa Dep't of Human Servs. (Feb. 2, 2015), http://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-Topics/Waivers/1115/downloads/ia/wellness-plan/ia-wellness-plan-current-appvl-02022015.pdf ("No waiver of freedom of choice is authorized for family planning providers.").

### HHSC'S EFFORTS TO TERMINATE PROVIDER PLAINTIFFS

38.     On October 19, 2015, without prior warning, HHSC sent a letter to each of the Provider Plaintiffs (received by each on October 21) terminating their Medicaid provider agreements, to be effective fifteen days after the receipt of a Final Notice of Termination. Although sent to each provider Plaintiff, the letters focus entirely on (false) allegations against Plaintiff PPGC and against a separate organization with which Plaintiffs associate, Planned Parenthood Federation of America ("PPFA").

### A.     PPGC Allegations

39.     Defendants claim four bases justifying PPGC's termination from the Medicaid program. None of these supposed bases undermines PPGC's competence to provide care in the Medicaid program—much less the competence of PPGT and PPST—and none is sustainable.

40.     First, PPGC's Notice of Termination claims that heavily edited and misleading videos produced by the radical anti-abortion group Center for Medical Progress ("CMP") indicate that PPGC "follow[s] a policy of agreeing to procure fetal tissue even if it means altering the timing or method of an abortion," and that "these practices violate accepted medical standards, as reflected in federal law, and are Medicaid program violations that justify termination." Neither PPGC nor its related entity PPCFC (which, unlike PPGC, provides

abortions) has any such policy. PPGC does not provide abortions, and does not participate in any fetal tissue donation. PPCFC is not currently involved in any way with fetal tissue donation and has not been for several years, and its policies expressly forbid alteration of the timing or method of the abortion for the purpose of obtaining the fetal tissue.

41.     Second, the Notice of Termination claims, again based on a CMP video, that PPGC has "failed to prevent conditions that would allow the spread of infectious diseases among employees, as well as patients and the general public," and specifically, "allowed individuals posing as commercial buyers of fetal body parts to handle bloody fetal tissue while wearing only gloves," in violation of "mandatory 'universal precautions,' including the use of 'protective barriers,'" required when infectious materials are handled. These accusations appear based on a portion of the video in which one of the anti-abortion activists posing as a representative from a fake tissue procurement company was permitted to examine fetal tissue in a lab at PPCFC. The precautions taken met the requirements of universal/standard precautions.

42.     Third, the Notice of Termination also asserts that the video reflects that staff "were not trained in infection control and barrier precautions with regard to the handling of fetal blood and tissue or they failed to comply with the minimum standards that mandatory training requires." No further information is given about the nature of the supposed deficiency. At PPCFC, staff receive appropriate training on infection control, including on blood-borne pathogens and appropriate barrier protections, as required by its own policies and by the licensure requirements for ambulatory surgical centers.

43.     Fourth, the Notice of Termination also asserts that Defendants "ha[ve] information suggesting that fraud and other related program violations have been committed by a number of Planned Parenthood affiliates enrolled in the Medicaid program in Texas, including

[PPGC]." In addition to unspecified "information that my office has recently received," HHSC cites two court cases as "proof" that PPGC is guilty of illegal billing practices – the *Reynolds* case, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. Tex.), and the *Carroll* case, *Carroll v. Planned Parenthood Gulf Coast*, No. 4:12-cv-03505 (S.D. Tex.).

44.    With respect to HHSC's statement that it is acting on allegations related to *Reynolds*, it is expressly barred from doing so. *Reynolds* was a meritless lawsuit against PPGC that both Texas and the federal government declined to join, settled with no admission of wrongdoing for practical reasons, including concern about patient confidentiality being compromised if the case proceeded. As part of the settlement, Texas expressly "agree[d] to release and refrain from instituting, directing or maintaining any action seeking permissive exclusion from the Texas Medicaid Program against PPGC for the Covered Conduct."

45.    The sole other "information" Defendants offer to support their fraud accusation is the existence of the *Carroll* case, an open case in which, again, both Texas and the federal government declined to join, and there has been no admission or finding of wrongdoing.

46.    None of the grounds asserted by Defendants relate at all to PPGC's competence to provide care in the Texas Medicaid program.

47.    On information and belief, Defendants' bases for terminating PPGC's provider agreements are highly irregular and have not been applied to any other Medicaid provider.

48.    Absent an injunction from the Court, Defendants will terminate PPGC's provider agreements on or about December 8, 2015.

**B.    PPGT and PPST Allegations**

49.    HHSC's main stated reason for terminating contracts with PPGT and PPST is that they are allegedly affiliated with PPGC.

50.     PPGT and PPST are wholly separate corporations from each other and from PPGC. They share no ownership interests; nor do they share any control over the delivery of health services at the various health centers each corporation operates, personnel, or finances.

51.     HHSC also indicates that it is terminating Provider Plaintiffs, in part, because of their association with PPFA, which HHSC suggests has some "national policy" of condoning "program violations." PPFA maintains no such policy.

52.     Provider Plaintiffs are not subsidiaries of PPFA. Rather, PPFA is a membership organization that promulgates medical and other standards to which members (known as "affiliates"), such as PPGT, PPST, and PPGC, must adhere to operate under the name "Planned Parenthood" and otherwise use the Planned Parenthood service mark.  PPFA does not provide medical services or operate health centers.

53.     There are fifty-nine Planned Parenthood affiliates across the country, each with its own board, CEO, and management structure, and each with control of its own finances and operations.

54.     Absent an injunction from the Court, Defendants will terminate PPGT's and PPST's provider agreements on or about December 8, 2015.

### THE IMPACT OF DEFENDANTS' ACTIONS ON PROVIDER PLAINTIFFS AND THEIR PATIENTS

55.     The need for publicly supported family planning services is great in Texas, which regularly ranks among the worst states for reproductive health care.  In 2010, 54% of pregnancies in Texas were unintended., *St. Facts About Unintended Pregnancy: Tex.* (2014), GUTTMACHER INST., https://www.guttmacher.org/statecenter/unintended-pregnancy/TX.html (hereafter "State Facts: Texas"). Texas is tied for the third highest teen pregnancy rate among the fifty states.  Kathryn Kost & Stanley Henshaw, *U.S. Teenage Pregnancies, Births and Abortions,*

*2010: Nat'l and St. Trends by Age, Race and Ethnicity* 4 (2014), Guttmacher Inst.,

http://www.guttmacher.org/pubs/USTPtrends10.pdf.  73.7% of Texas's unplanned births are

publicly funded, which is higher than the national average of 68%. State Facts: Texas. Texas also

has high and rising STIs rates. Chlamydia and gonorrhea rates in Texas are well above the

national average. Moreover, the number of reported gonorrhea, chlamydia, and syphilis cases has

increased consistently since 2010. Ctrs. for Disease Control & Prevention, *Sexually Transmitted*

*Disease Surveillance 2014*, at 81–82, 93–94, 107–08 (2015),

http://www.cdc.gov/std/stats14/surv-2014-print.pdf.

56.     In 2013, an estimated 3,190,970 Texas women needed contraceptive services and

supplies. Of these, 1,774,240 women (55.6%) needed publicly supported services., Jennifer L.

Frost, et al., *Contraceptive Needs and Servs., 2013 Update* at 19 (July 2014), Guttmacher Inst.,

http://www.guttmacher.org/pubs/win/counties/pdf/contraceptive-needs-2013.pdf.

57.     Only the most needy individuals in Texas are eligible to receive Medicaid

coverage.  In addition to having a low-income, an individual must also meet a special

characteristic, such as being pregnant or having a disability, to be eligible for Medicaid.

58.     In recent years, the provider network available to Texas Medicaid patients has

declined, to just over 30% of practicing physicians as of 2012. *Drop In Physician Acceptance of*

*Medicaid, Medicare Patients* (2012), Tex. Med. Ass'n,

http://www.texmed.org/template.aspx?id=24764.

59.     Even if other providers were available, patients insured through Medicaid choose

Provider Plaintiffs based on a number of factors that are generally not available at other

providers. With its evidence-based practices and up-to-date technology, Provider Plaintiffs are

known as providers of high-quality medical care. Many individuals who receive other health care

through community care providers or other Medicaid providers choose to have a separate provider such as Provider Plaintiffs for their reproductive health care because they are concerned about their privacy and because they fear being judged by other providers.

60.    In addition, many low-income patients have unique scheduling constraints because they are juggling inflexible work schedules, childcare obligations, transportation challenges, and lack of childcare resources. To ensure that these patients have access to family planning services, Provider Plaintiffs offer extended hours. In addition, Provider Plaintiffs space patient appointments so as to minimize wait times. They also offer same-day birth control shots, birth control implants, and intrauterine devices, so that patients only need to make one trip to a health center to obtain their contraceptive method of choice. Provider Plaintiffs have either a full-time Spanish speaker on staff or translator services available to non-English speaking patients at all times.

61.    Defendants' actions will deprive all of Provider Plaintiffs' Medicaid patients, including Plaintiffs Jane Doe #1 through #10, of access to the high-quality, specialized care that Provider Plaintiffs provide.

62.    All Patient Plaintiffs rely on Provider Plaintiffs as the providers they can turn to for critical medical care and for prompt, efficient, and compassionate services. If Provider Plaintiffs are eliminated from Medicaid, Plaintiffs Jane Doe #1 through #10, and other class members, will be prevented from receiving services from their provider of choice, will have their health care interrupted, and may encounter difficulties finding alternative care.

63.    In 2014, PPGT's reimbursements for providing these critical health services to low-income patients totaled 5% of its overall revenue.

64.     In 2014, PPST's reimbursements for providing these critical health services to low-income patients totaled 10% of its overall revenue.

65.     In 2014, PPGC's reimbursements for providing these critical health services to low-income patients totaled over 20% of its Texas revenue.

66.     Without this revenue, Provider Plaintiffs may be unable to continue to provide services in the same manner and may be forced to lay off staff members, reduce hours, or close a health center. If a health center closes, this will affect not only the Medicaid patients at that health center, but all of the patients who seek reproductive health care at that health center.

## CLASS ALLEGATIONS

67.     This lawsuit is properly maintained as a class action under Federal Rules of Civil Procedure 23(b)(1)(B) and (b)(2).

68.     The class consists of all Texas Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services at Provider Plaintiffs.

69.     Although the precise size of the class is unknowable, as alleged in Paragraphs 11, 12, and 13 above, Provider Plaintiffs provided covered health care services to over 13,500 Medicaid patients in 2014.  Therefore, the approximate size of the class is 13,500 individuals.

70.     Plaintiffs Jane Doe #1 through #10 are adequate class representatives because they, like other members of the class, are Texas residents and Medicaid patients who obtain their reproductive health care at Provider Plaintiffs' health centers and desire to continue to do so. Unless Defendants are enjoined, class representatives and class members will suffer the same injury and resulting harm:  they will be unable to obtain health care services at the provider of their choice. As a result, many of Provider Plaintiffs' Medicaid patients, including Plaintiffs Jane Doe #1 through #10 and other class members, who already have few or no alternative options,

will find it difficult or impossible to access the reproductive and other health care services they need.

71.     Defendants' actions—terminating Provider Plaintiffs from the Medicaid program—apply generally to the class, such that both declaratory and injunctive relief is appropriate for all members of the class.

72.     Class members raise the same questions of law, including whether Defendants' termination of Provider Plaintiffs' Medicaid provider agreements violates the Medicaid freedom-of-choice provision, 42 U.S.C. § 1396a(a)(23), and the Fourteenth Amendment, such that, as a practical matter, adjudication of their claims would be dispositive of the interests of the other class members.

## CLAIMS FOR RELIEF

### CLAIM I—MEDICAID ACT (TITLE XIX OF SOCIAL SECURITY ACT)

73.     Plaintiffs hereby incorporate Paragraphs 1 through 72 above.

Defendants' actions violate Section 1396a(a)(23) of Title 42 of the United States Code by denying Provider Plaintiffs' patients, including the Plaintiffs Jane Doe #1 through #10, the right to choose any willing, qualified health care provider in the Medicaid program.

### CLAIM II—FOURTEENTH AMENDMENT EQUAL PROTECTION

74.     Plaintiffs hereby incorporate Paragraphs 1 through 72 above.

75.     Defendants' actions violate Plaintiffs' rights by singling them out for unfavorable treatment without adequate justification.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court:

76.     Order that this action be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1)(B) and/or 23(b)(2);

77.     Issue a declaratory judgment that Defendants' actions violate the Medicaid Act;

78.     Issue a declaratory judgment that Defendants' actions violate the Fourteenth Amendment;

79.     Issue temporary, preliminary, and permanent injunctive relief, without bond, enjoining Defendants and their agents, employees, appointees, delegates, or successors from terminating, or threatening to terminate Provider Plaintiffs' Medicaid provider agreements;

80.     Grant Plaintiffs attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and,

81.     Grant such further relief as this Court deems just and proper.

Respectfully submitted the 23rd day of November, 2015.

HUSCH BLACKWELL, L.L.P
BY: /s/ Thomas H. Watkins
THOMAS H. WATKINS
Texas Bar No. 20928000
Email: Tom.Watkins@huschblackwell.com
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 (facsimile)

JENNIFER SANDMAN *
PLANNED PARENTHOOD FEDERATION OF AMERICA
Email: Jennifer.Sandman@ppfa.org
434 West 33rd Street
New York, NY 10001

(212) 261-4584
(212) 247-6811 (facsimile)

ALICE CLAPMAN *
RICHARD MUNIZ * [θ]
PLANNED PARENTHOOD FEDERATION OF AMERICA
Email: Alice.Clapman@ppfa.org
Email: Richard.Muniz@ppfa.org
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4862 (Alice Clapman)
(202) 973-4997 (Richard Muniz)
(202) 296-3480 (facsimile)

ATTORNEYS FOR PLAINTIFFS

* Application for admission *pro hac vice* pending
[θ] Practicing under supervision of lawyers
    admitted in DC.